**UNITED STATES COURT FOR THE**
**SOUTHERN DISTRICT OF OHIO**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

Dynegy Zimmer, LLC

*Defendant*.

Civ. No. ____________________________

**COMPLAINT**

Plaintiff, the United States of America, by the authority of the Attorney General, through its undersigned attorneys, and at the request of the Administrator of the United States Environmental Protection Agency (EPA) hereby files this Complaint and alleges the following.

**NATURE OF THE ACTION**

1. This is a civil action brought pursuant to Section 113(b) of the Clean Air Act (CAA), 42 U.S.C. § 7413(b), by Plaintiff for injunctive relief and the assessment of civil penalties against Defendant Dynegy Zimmer, LLC (Dynegy) for violations of the CAA and regulations and permits thereunder at Defendant's coal burning power generating station (the Zimmer Station) located in Moscow, Ohio.

**JURISDICTION, VENUE AND AUTHORITY**

2. This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b) and 28 U.S.C. §§ 1331, 1345, and 1355. The Court has personal jurisdiction over the Parties.

3. Venue is proper in this judicial district pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b) and 28 U.S.C. §§ 1391(b) and (c), 1395(a), because Defendant is located in this judicial district and the violations alleged herein occurred within this district, in Moscow, Ohio.

4. Authority to bring this action is vested in the United States Department of Justice pursuant to Section 305 of the CAA, 42 U.S.C. § 7605 and 28 U.S.C. §§ 516 and 519.

## PARTIES

5. Plaintiff the United States of America is acting at the request of EPA, an agency of the United States.

6. Defendant Dynegy Zimmer, LLC is a corporation organized under the laws of the State of Delaware.

7. Defendant Dynegy Zimmer, LLC is a "person" as defined by Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

## BACKGROUND OF APPLICABLE CAA AUTHORITIES

### A. Applicable CAA Authorities

8. The Clean Air Act establishes a regulatory scheme designed to protect and enhance the quality of the nation’s air so as to promote the public health and welfare and the productive capacity of its population. 42 U.S.C. § 7401(b)(1).

#### *i. OHIO SIP and Permit to Install*

9. Section 108(a) of the CAA, 42 U.S.C. § 7408(a), requires EPA to issue air quality criteria for each pollutant (criteria pollutant), the emissions of which cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare, and the

presence of which in the ambient air results from numerous or diverse mobile or stationary sources.

10. Section 109(a) of the CAA, 42 U.S.C. § 7409, requires EPA to promulgate national ambient air quality standards (NAAQS) for each criteria pollutant. EPA has promulgated NAAQS for sulfur oxides ($SO_2$) (which is measured in the ambient air as sulfur dioxide), nitrogen oxides (NOx) (which is measured in the ambient air as nitrogen dioxide), carbon monoxide (CO), ozone, particulate matter (PM), and lead. 40 C.F.R. Part 50.

11. Section 107(d) of the CAA, 42 U.S.C. § 7407(d), requires EPA to promulgate designations of those areas within a state that do not meet the NAAQS (Non-Attainment areas), areas that meet NAAQS (Attainment areas), and areas that cannot be classified as meeting or not meeting the NAAQS (Unclassifiable areas). Air quality designations can be found at 40 C.F.R. Part 81.

12. Section 110 of the CAA, 42 U.S.C. § 7410, requires each state to adopt and submit to EPA for approval a state implementation plan (SIP) that provides for the implementation, maintenance, and enforcement of the NAAQS. Once EPA approves a SIP, it is also independently enforceable by the federal government under Section 113 of the CAA, 42 U.S.C. § 7413.

13. The State of Ohio has a SIP (Ohio SIP) approved by EPA which is codified at Ohio Administrative Code (OAC) 3745 et seq. *See* 40 C.F.R. Part 52 Subpart KK (40 C.F.R. § 52.1870 et seq.).

14. Part C of Title I (Sections 160 through 169B) of the CAA, 42 U.S.C. §§ 7470-92, sets forth requirements for the prevention of significant deterioration (PSD) of air quality in those areas designated as either Attainment or Unclassifiable for purposes of meeting the

NAAQS. Pursuant to Section 165(a) of the CAA, 42 U.S.C. § 7475(a), no "major emitting facility" may be constructed or modified in an Attainment or Unclassifiable area unless, among other things: (a) a PSD permit has been issued for the proposed facility; and (b) the proposed facility is subject to the best available control technology (BACT) for each pollutant subject to regulation under the CAA emitted from, or which results from, such facility. 42 U.S.C. §§ 7475(a)(1), (4); 7479(2)(C) ("construction" includes the modification of a facility).

15. State-issued PSD permits are federally enforceable. *See* 42 U.S.C. § 7413(b).

16. On February 5, 1987, pursuant to the CAA, 42 U.S.C. § 7475(a), and the Ohio SIP, OAC 3745-31, Ohio EPA issued a PSD Permit permitting the construction of the Zimmer Station (Permit to Install 14-1036) (PTI).

### ***ii. New Source Performance Standards***

17. Section 111(b)(1) of the CAA, 42 U.S.C. § 7411(b)(1), requires EPA to: (a) publish a list of categories of stationary sources that, in its judgment, cause or contribute significantly to air pollution that may reasonably be anticipated to endanger the public health or welfare; and (b) promulgate standards of performance for new sources within those categories. These standards, commonly known as the New Source Performance Standards (NSPS) are codified at 40 C.F.R. Part 60.

18. "New source" is defined as a stationary source, the construction or modification of which is commenced after the publication of the regulations (or, if earlier proposed regulations) prescribing a standard of performance applicable to such source. 42 U.S.C. § 7411(a)(2). "Stationary source" is defined as any "building, structure, facility, or installation which emits or may emit any air pollutant." 42 U.S.C. § 7411(a)(3).

19. Section 111(e) of the CAA, 42 U.S.C. § 7411(e), prohibits an owner or operator of a new source from operating any new (i.e., constructed or modified) source in violation of an NSPS after the effective date of the NSPS applicable to such source.

***iii. Title V of the CAA***

20. Title V of the CAA, 42 U.S.C. §§ 7661-61f, and the regulations promulgated thereunder establish an operating permit program for certain sources, including "major sources" subject to NESHAP requirements. 42 U.S.C. § 7661a(a).

21. Pursuant to Section 502(b) of the CAA, 42 U.S.C. § 7661a(b), EPA promulgated regulations implementing the requirements of Title V and establishing the minimum elements of a Title V permit program to be administered by any state or local air pollution control agency. 57 Fed. Reg. 32,250 (July 21, 1992). These regulations are codified at 40 C.F.R. Part 70.

22. Under the CAA Title V provisions and regulations promulgated thereunder, all "applicable requirements" for compliance with the CAA, including PSD Permit and NSPS requirements, are set forth in one operating permit known as a Title V permit. 42 U.S.C. § 7661c(a) and 40 C.F.R. § 70.6(a).

23. Pursuant to Section 502(d) of the CAA, each state develops and submits to EPA for approval a permit program meeting the requirements of Title V and the regulations promulgated thereunder. Upon EPA approval, the state administers the Title V program, including the issuance of Title V permits, within that state. 42 U.S.C. § 7661a(d). However, EPA retains the authority to enforce state-issued Title V permits. *See* 42 U.S.C. § 7413(b); 40 C.F.R. § 70.6(b).

24. On August 15, 1995, EPA fully approved the Title V program of the state of Ohio, effective October 1, 1995, which is codified at OAC 3745-77. 60 Fed. Reg. 42,045 (Oct. 1, 1995).

25. The CAA, federal Title V regulations, and Ohio Title V regulations provide that no source subject to Title V may operate except in compliance with a Title V permit. 42 U.S.C. § 7661a(a); 40 C.F.R. §§ 70.1(b) and 70.7(b); OAC 3745-77-02(A).

26. On November 18, 2004, OEPA issued Title V Permit No 14-13-09-0154 to the Zimmer Station (2004 Title V Permit), which was renewed on March 23, 2017 (2017 Title V Permit).

**B. Particular Requirements Relevant to this Case**

***i. Opacity Requirements***

27. Applicable NSPS regulations, the Ohio SIP, and the PTI and Title V permits for the Zimmer Station each contain limits on the Zimmer Station's particulate matter emission as well as on the "opacity" of visible emissions. Opacity is a measure (by percentage) of the amount of light attenuated by particulate matter in effluent emissions. Fully transparent stack emissions that do not attenuate light will have an opacity of zero percent. Opaque stack emissions that attenuate all of the visible light have an opacity of 100 percent. Opacity is used generally as an indicator of the degree of particulate matter emissions.

28. Pursuant to Section 111(b) of the CAA, 42 U.S.C. § 7411(b), EPA promulgated NSPS Subpart Da (NSPS Subpart Da), 40 C.F.R. §§ 60.40Da-52Da, which sets forth requirements for "each electric utility steam generating unit that is capable of combusting more than 73 megawatts (MW) (250 million British thermal units per hour (mmBtu/hr)) heat input of fossil fuel … and [f]or which construction, modification, or reconstruction is commenced after

September 18, 1978." 40 C.F.R. § 60.40Da(a). Each such utility is an "affected facility" subject to the requirements of NSPS Subpart Da. *Id.*

29. NSPS Subpart Da and the Ohio SIP define "opacity" as "the degree to which emissions reduce the transmission of light and obscure the view of an object in the background." 40 C.F.R. 60.2; OAC 3754-17-01(14).

30. NSPS Subpart Da, 40 C.F.R. § 60.42Da(b), states that: "an owner or operator of an affected facility shall not cause to be discharged into the atmosphere any gases which exhibit greater than 20 percent opacity (6-minute average), except for one 6-minute period per hour of not more than 27 percent opacity."

31. The Ohio SIP, OAC 3745-17-07(A)(1), also states "visible particulate emissions from any stack shall not exceed twenty percent opacity, as a six-minute average. [The]… visible particulate emissions from any stack may exceed twenty percent opacity, as a six-minute average, for not more than six consecutive minutes in any sixty minutes, but shall not exceed 60% opacity, as a six-minute average, at any time. 59 Fed. Reg. 27,464 (May 27, 1994).

32. The PTI for the Zimmer Station similarly states that opacity shall not exceed "20% as a six-minute average except for one six-minute period per hour of not more than 27%." PTI No. 14-1036 at 2.

33. At all relevant times herein, the Zimmer Station's Title V Permits contained the opacity limits in NSPS Subpart Da and the PTI (as set forth in Paragraphs 30 and 32 above) because those limits are stricter than the SIP's opacity limit. *See* 2004 Title V Permit at Part III.A.I.1 and 2.c; 2017 Title V Permit at C.1.b.1.a and c (noting that the strictest limit applies).

### *ii. $SO_2$ Emission Limits*

34. The PTI Permit for the Zimmer Station requires compliance with a short-term BACT $SO_2$ emissions limit for Boiler 006 of 1.0 lb/mmBtu based on a 3-hour average. PTI No. 14-1036 at 9.

35. At all relevant times herein, the $SO_2$ limit set forth in Paragraph 35 above was contained in Zimmer Station's Title V Permits. *See* 2004 Title V Permit at Part III.A.I.1 and 2.b; 2017 Title V Permit at C.1.b.1.c.

### C. CAA Enforcement Authority

36. Sections 113(a) and (b) of the CAA, 42 U.S.C. §§ 7413(a) and (b), authorize EPA to bring a civil action against any person who violates any regulation promulgated pursuant to Section 111 of the CAA, any requirement or prohibition of, or permit issued under, an EPA-approved SIP, or a Title V permit.

37. Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the Court to enjoin a violation, to require compliance, to assess a civil penalty, and to award any other appropriate relief for each violation.

38. Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes injunctive relief and civil penalties of up to $25,000 per day for each violation of the CAA or regulation promulgated or violation of a permit issued thereunder including state-issued permits pursuant to EPA-approved SIPs and Title V permits. This statutory maximum civil penalty has been increased to reflect inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act (28 U.S.C. § 2461), as amended, to $37,500 per day for each violation occurring after January 12, 2009, through November 2, 2015, and up to $101,439 per day per violation for each violation occurring

after November 2, 2015, and assessed after January 13, 2020. *See* 85 Fed. Reg. 1755 (Jan. 13, 2020), codified at 40 C.F.R. Part 19.

## GENERAL ALLEGATIONS

39. The Zimmer Station is located at 1781 U.S. Route 52 in Moscow, Ohio.

40. The Zimmer Station is a fossil fuel-fired electric generation plant that began initial operation in March 1991.

41. At all relevant times herein, the Zimmer Station has had a coal-fired boiler known as Boiler B006.

42. At all relevant times herein, Boiler B006 at the Zimmer Station has emitted "air pollutants" and air contaminants within the meaning of the CAA and Ohio SIP. *See* 42 U.S.C. § 7602(g); OAC 3745-15-01(B) ('"Air pollutant' or 'air contaminant' means particulate matter, dust, fumes, gas, mist, smoke, vapor or odorous substances, or any combination thereof").

43. At all relevant times herein, Defendant has been the "owner" and "operator" of the Zimmer Station and Boiler 006 within the meaning of the CAA, NSPS, and the Ohio SIP. *See, e.g.,* 42 U.S.C. §§ 7413(b), 7661a; 40 C.F.R. §§ 60.2; OAC 3745-15-01(T).

44. At all relevant times herein, the Zimmer Station and Boiler B006 have each been, a "source," "stationary source," a "major stationary source," a "major emitting facility," a "major source" and a "facility" within the meaning of the CAA, NSPS and the Ohio SIP. *See* 42 U.S.C. §§ 7602(j) (defining "major stationary source") and (z) (defining "stationary source"), 7661 (defining "major source") and 40 C.F.R. § 60.2 (defining "stationary source"); OAC 3745-31-01(NNN),(W) (defining "source" and "major stationary source"); 3745-17-01(B)(5) (defining "facility" as a stationary source).

45. Construction of Boiler B006 commenced after September 18, 1978 and, at all relevant times herein, Boiler B006 had a net generating capacity of approximately 1,300 Megawatts (MWs).

46. At all relevant times herein, Boiler B006 has been an "affected facility" within the meaning of NSPS Subpart Da, 40 C.F.R. § 60.40Da(a).

47. Boiler 006 emits air pollutants including $SO_2$ and PM through a "stack" within the meaning of OAC 3745-15-01(Y).

48. At all relevant times herein, Defendant, as the owner and operator of the Zimmer Station, was required to comply with the requirements set forth in the PTI and the 2004 and 2017 Title V Permits.

49. In March of 2008, November of 2010, and December of 2014, EPA issued Notice of Violations (NOVs) to Defendant which alleged the opacity and $SO_2$ emissions violations at the Zimmer Station that are the subject of this Complaint.

50. EPA has issued Defendants three requests for information (in 2003, 2009, and 2010) in response to which Defendant provided information to EPA.

**FIRST CLAIM FOR RELIEF: Opacity Violations**

51. The allegations in Paragraphs 1 - 51 are hereby re-alleged and incorporated by reference as if fully set forth herein.

52. At all relevant times herein, Boiler 006 at the Zimmer Station has been an "affected facility" within the meaning of NSPS, 40 C.F.R. §§ 60.2, 60.40Da, because it is a steam generating unit that commenced construction after September 18, 1978, and that has a heat input capacity from fuels combusted in the steam generating unit of greater than 73 MW. As such, Boiler 006 is subject to the requirements of NSPS Subpart Da, 40 C.F.R. § 60.40Da et seq.

53. At all relevant times herein, NSPS Subpart Da, the Ohio SIP, the PTI and the 2004 and 2017 Title V Permits required that Defendant not cause to be discharged into the atmosphere gases which exhibit greater than 20 percent opacity on a 6-minute average. NSPS Subpart Da, the PTI and the 2004 and 2017 Title V Permits except one 6-minute period per hour of not more than 27% opacity, and the Ohio SIP excepts one 6-minute period per hour of not more than 60% opacity. *See* 40 C.F.R. § 60.42Da(b); OAC 3745-31-05(A)(3); the PTI Permit; 2004 Title V Permit at Part III.A.I.1 and 2.c; 2017 Title V Permit at C.1.b.1.a.

54. On numerous occasions after November 19, 2010, gases exhibiting greater than 20 percent opacity on a 6-minute average were discharged from the Zimmer Station into the atmosphere in violation of NSPS Subpart Da, the Ohio SIP, and the Zimmer Station's PTI and Title V permits.

55. Based on a reasonable opportunity for further investigation or discovery, unless restrained by the Court these violations will continue.

56. As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Defendant is liable for injunctive relief and the assessment of civil penalties to the United States up to the amounts set forth in Paragraph 38 above per day for each violation.

**SECOND CLAIM FOR RELIEF: $SO_2$ Emissions Violations**

57. The allegations in Paragraphs 1 - 51 are hereby re-alleged and incorporated by reference as if fully set forth herein.

58. At all relevant times herein, Boiler 006 at the Zimmer Station has been "fuel burning equipment" within the meaning of the Ohio SIP, OAC 3745-18-01(B)(4) and (5).

59. At all relevant times herein, the PTI and Title V Permits for the Zimmer Station prohibited Defendant from causing $SO_2$ emissions from Boiler 006 to exceed 1.0 lb/mmBtu on a

3-hour average. PTI Permit No. 14-1036 at 9; 2004 Title V Permit at Part III.A.I.1 and 2.b; 2017 Title V Permit at C.1.b.1.c.

60. On numerous occasions after November 19, 2010, $SO_2$ emissions from Boiler 006 exceeded 1.0 lb/mmBtu on a 3-hour average in violation of the Zimmer Station's PTI and Title V Permits.

61. Based on a reasonable opportunity for further investigation or discovery, unless restrained by the Court these violations will continue.

62. As a result of the above-listed violations, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), Defendant is liable for injunctive relief and the assessment of civil penalties to the United States up to the amounts set forth in Paragraph 38 above per day for each violation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court:

A. Assess against Defendant a civil penalty, and enter judgment against Defendant and in favor of the United States, in an amount up to the statutory maximum penalties per day of violation authorized by the CAA as amended and as set forth in Paragraph 38 above.

B. Award the United States injunctive relief pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b);

C. Grant such other relief as this Court may deem just and proper.

Respectfully submitted,

BRUCE S. GELBER
Deputy Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

KAREN S. DWORKIN
Deputy Section Chief
Environmental Enforcement Section

/s/ Elizabeth L. Loeb
ELIZABETH L. LOEB
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources
Division
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 616-8916

DAVID M. DEVILLERS
United States Attorney
*s/ Matthew J. Horwitz*
MATTHEW J. HORWITZ (0082381)
Assistant United States Attorney
Attorney for Defendant
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6972
E-mail: Matthew.Horwitz@usdoj.gov

Of Counsel:
Sabrina Argentieri
U.S. Environmental Protection Agency